**NORWEST BANK MINNESOTA, N.A., as Trustee under that Certain Pooling and Service Agreement dated as of March 1, 1998 for Southern Pacific Secured Assets Corp. Mortgage Loan Asset–Backed Pass–Through Certificates, Series 1998–1, Respondent,**

v.

**Paul N. ODE; Paul N. Ode as Trustee of the Esther Ode Inter Vivos Trust Dated February 12, 1982; John Doe and Mary Roe, Defendants,**

**Jeanine Ode, et al., Appellants.**

**No. C0–00–133.**

Court of Appeals of Minnesota.

Aug. 1, 2000.

Review Denied Oct. 17, 2000.

Lawrence P. Zielke, Beth W. Asmussen, Shapiro & Nordmeyer, Edina, for respondent.

James T. Hynes, Stapelton, Nolan & Hynes P.A., St. Paul, for appellants.

Considered and decided by TOUSSAINT, Chief Judge, HALBROOKS, Judge, and PARKER, Judge.

## OPINION

EDWARD J. PARKER, Judge.*

Appellants challenge the district court decision granting respondent summary

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

judgment and a decree of foreclosure on a mortgage, contending reformation was not appropriate under the circumstances. We reverse and remand.

## FACTS

The owner of the property at issue is the Esther Ode Inter Vivos Trust dated February 12, 1982. The trustee during the relevant time was Paul Ode, and the beneficiaries are appellants Jeanine Ode and Michelle Ode, Esther Ode's granddaughters and Paul Ode's daughters.

In 1995, the trustee obtained a mortgage on the trust property; it appears undisputed that he used the proceeds for his own purposes. He later defaulted, and a foreclosure sale took place on August 12, 1997. Ode sought a loan from Oceanmark Financial Corporation to redeem the property. As part of this process, on January 4, 1998, Old Republic National Title Insurance Company issued a title commitment, performed by another title company and billed to Oceanmark. It required the following documents if the mortgage were to be executed by Ode individually:

(1) Deed executed by Paul N. Ode, as Trustee of the Esther Ode Inter Vivos Trust dated February 12, 1982, to Paul N. Ode.

(2) Full copy of Trust Instrument, to be reviewed by Old Republic National Title for possible further requirements. NOTE: Because such a transfer potentially implies "self-dealing," we must have review and approval by Old Republic.

(3) Mortgage shall be executed by Paul N. Ode, and spouse, if any.

(4) Affidavit of Trustee, in recordable form.

(5) Certificate of Trust, in recordable form.

(6) Transfer Requirements: Affidavit of Trustee Seller; Affidavit of Purchaser; Well Disclosure Statement; and Certificate of Real Estate Value.

Minn. Const. art. VI, § 10.

(7) Septic Certifications, as per requirements of Cook County (if any).

On the last day of the redemption period, February 12, 1998, Ode redeemed the property by obtaining a loan from Oceanmark for $97,800, secured by a mortgage on the trust property. He signed the note and the mortgage as Paul Ode individually, not as Paul Ode trustee. On the following day, Oceanmark assigned the mortgage to respondent Norwest Bank. Several weeks later, Ode was asked to sign a quit-claim deed, back-dated to February 12, 1998, that would have transferred the trust property from Paul Ode as trustee to Paul Ode individually. He refused.

Ode defaulted on the loan and Norwest brought a foreclosure action. It initially sought reformation of the chain of title to show that title to the trust property vested in Paul Ode individually, rather than in Paul Ode as trustee, contending that a mutual mistake had occurred. Norwest scheduled a motion for summary judgment, but shortly before the hearing, appellant beneficiaries became aware of the mortgages for the first time and intervened. They obtained a continuance and moved for summary judgment as well. Norwest then filed an amended complaint seeking reformation of the chain of title or, in the alternative, reformation of the mortgage to show Paul Ode executed it in his capacity as trustee.

After the hearing, the district court reformed the mortgage to provide that it was executed by Paul Ode in his capacity as trustee; the court said this was done to avoid unjust enrichment of appellant beneficiaries. The district court later granted a decree of foreclosure and ordered the property sold by sheriff's sale.

The beneficiaries appealed, and Norwest filed a notice of review. Ode did not participate in the appeal.

## ISSUE

Was reformation proper?

## ANALYSIS

### A. Reformation

■ Trial court findings of fact in a reformation action will not be reversed unless clearly erroneous. *Theisen's, Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976). But an appellate court will reverse if the facts do not support the legal conclusion as to reformation. *Kleis v. Johnson*, 354 N.W.2d 609, 612 (Minn.App.1984).

■ A court may reform a written instrument—in this case the mortgage—if three elements are present:

(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn.1980) (citations omitted). "The evidence supporting reformation of a written instrument, including a deed, must be consistent, clear, unequivocal, and convincing." *Kleis*, 354 N.W.2d at 611 (citation omitted).

■ "Reformation is generally allowed against the *original* parties to an instrument and those in privity with the original parties." *Manderfeld v. Krovitz*, 539 N.W.2d 802, 805 (Minn.App.1995), *review denied* (Minn. Jan. 25, 1996). One who is not a party or not in privity with a party to an agreement cannot be bound by it. *Nunnelee v. Schuna*, 431 N.W.2d 144, 148 (Minn.App.1988), *review denied* (Minn. Dec. 30, 1988).

■ Ode as an individual signed the note and mortgage, while Ode as trustee controlled the trust assets. We first address whether Ode as an individual was in privity with Ode as trustee, such that an agreement by Ode as an individual would be binding on Ode as trustee. "At law a trustee is regarded as owner of the trust property with 'all the rights and subject to all the liabilities of ownership.'" *McLaughlin v. Minnesota Loan & Trust Co.*, 192 Minn. 203, 208, 255 N.W. 839, 841 (1934) (citation omitted). The trustee is authorized to mortgage trust assets, Minn. Stat. § 501B.81, subd. 19 (1998), and the trust document specifically allowed the trustee to enter into mortgages as well. But a trustee is forbidden from purchasing or dealing "in the trust property for his own benefit or on his own behalf, either directly or indirectly." *Malcolmson v. Goodhue County Nat'l Bank*, 198 Minn. 562, 567, 272 N.W. 157, 160 (1936). Here, Ode refused to sign the back-dated Trustee's Deed that would have transferred the trust assets to him individually.

Privity has been described as "merely the name for a legal relation arising from right and obligation." *La Mourea v. Rhude*, 209 Minn. 53, 57, 295 N.W. 304, 307 (1940). In this case, there is no legal relationship between the individual and the trustee; to the contrary, a trustee may not deal in trust property for his own benefit. *Malcolmson*, 198 Minn. at 567, 272 N.W. at 160. Ode as an individual and Ode as trustee do not have a legal relationship and, as a matter of law, are not in privity with each other. The district court order would have had the effect of ordering Ode to violate the trust provisions.

### B. Valid Agreement

■ We next address whether, in any event, the parties had reached a valid agreement expressing their real intentions. *Nichols*, 294 N.W.2d at 734. The court determined the parties intended that the trust property provide security for the loan. But the court also found that respondent took what we believe are two different positions, "that Ode either acquire the property from the trust or, alternatively, that he execute the note and the mortgage on behalf of the trust." After the closing, Ode was asked to sign a quit-

claim deed so he could transfer the property from the trust to himself individually.

An agreement is defined as follows:

A mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons.

Black's Law Dictionary 67 (7th ed.1999). The district court findings show, as a matter of law, that there was no agreement. An agreement that Ode as an individual would gain title to trust property is far different from an agreement that Ode as trustee would sign the note and mortgage.

### C. Mistake

 We next address whether the "mistake" the district court corrected was one that could be remedied by reformation. An agreement may be reformed when the parties made a mutual mistake, there was a unilateral mistake by one party accompanied by fraud or inequitable conduct, or the parties failed to comply with a legal requirement for execution, such as including the proper grantor. *Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn.1984). The district court found Oceanmark and Ode committed a mutual mistake in executing a mortgage agreement with Ode as an individual, rather than Ode as trustee.

If the trustee and Oceanmark had agreed that the mortgage would be between them and, by mutual mistake, contrary to their agreement, Ode individually was made a party to the mortgage, reformation would be available to correct this mistake. *See id.* But both Ode and Oceanmark knew he was obtaining a loan in his individual name, using the trust property as security. Oceanmark appears to have ignored the title company's warnings of title problems foreseen for this transaction, and instead went forward without resolving them. This is not a mutual mistake that reformation was intended to correct. Instead, reformation was an abuse of discretion because it amended the actual agreement, in which Ode was the grantor and personally responsible to one in which the trust was grantor and the res was collateral.

 Respondent also contends it made a unilateral mistake, accompanied by inequitable conduct, because of misrepresentations by Ode. But Oceanmark's title insurance company had warned that before the trust property could provide security, a trustee's deed would be necessary if Ode executed the mortgage as an individual (and pointed out that such a transfer "implies self-dealing" by the trustee). It nonetheless proceeded to go forward and close with Ode as an individual without obtaining such documents. This is not a "mistake" to which reformation applies. *See Manderfeld*, 539 N.W.2d at 806 (holding court may not reform contract to correct "mistake" in not obtaining consent of joint tenant). Under the circumstances, reformation was not properly exercised here.

### D. Unjust Enrichment

 Finally, the district court determined that unjust enrichment of the beneficiaries warranted reformation. Equitable grounds alone provide an insufficient basis for reformation. *Otto v. Weber*, 379 N.W.2d 692, 695 (Minn.App.1986). Further, it must be based on "unjust" behavior in the sense of illegal or unlawful behavior. *Hesselgrave v. Harrison*, 435 N.W.2d 861, 864 (Minn.App.1989), *review denied* (Minn. Apr. 24, 1989). There is no evidence that the beneficiaries engaged in such unjust behavior; indeed, they were unaware of the first mortgage, the foreclosure, and this mortgage. In fact, in discussing his unjust enrichment conclusion, the trial court observed that "the beneficiaries committed no wrongdoing."

 In addition, unjust enrichment applies when there is no contract governing the rights of the parties. *Stein v. O'Brien*, 565 N.W.2d 472, 474 (Minn.App.1997). In this case, there *is* a contract and a legal

remedy is available. Oceanmark loaned money to Ode as an individual; respondent may pursue its lawsuit against Ode individually to collect on the unsecured note.

### E. Ratification

Respondent also addresses whether the beneficiaries should be bound by the agreement because they ratified it, although this was not a basis of the trial court's order. First, we note the beneficiaries had no knowledge of the transactions until 14 months after they took place. Generally, however, a beneficiary is bound by the trustee's decision, because the trustee "is regarded as owner of the trust property with all the rights and subject to all the liabilities of ownership." *McLaughlin*, 192 Minn. at 208, 255 N.W. at 841 (citation omitted). But here, respondent's theory would not apply, based on our holding that the trustee is not bound. Further, the record is utterly devoid of any evidence that the beneficiaries ratified Ode's acts; on the contrary, they brought suit immediately upon learning the facts.

We do not reach the U.C.C. argument raised by respondent because we do not address arguments for the first time on appeal. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

Finally, the district court awarded respondent attorney fees pursuant to the note. *See* Minn.Stat. § 582.01, subds. 1, 2 (1998) (providing for award of attorney fees upon foreclosure). In light of our decision, we reverse the award of attorney fees.

## DECISION

The district court orders reforming the mortgage, foreclosing the mortgage, and awarding attorney fees are reversed and remanded.

**Reversed and remanded.**